# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW DENNIS, | Case No. 1:17-cv-00529-DAD-JLT (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| DAVE DAVEY, | |
| Respondent. | |

Petitioner is currently in custody of the California Department of Corrections and Rehabilitation at California State Prison ("CSP"), Corcoran, California. He has filed a petition for writ of habeas corpus challenging a disciplinary action taken against him for battery on an inmate. Petitioner claims the evidence was insufficient and he was denied his due process rights. Respondent claims that Petitioner was afforded all the procedural and substantive due process rights to which he was entitled. The Court will recommend[1] the petition be DENIED.

## I.    BACKGROUND

---

[1] In his Traverse, Petitioner states he filed a decline to the jurisdiction of the magistrate judge. He believes that despite his decline, the case has been assigned solely to the undersigned. Petitioner is incorrect. Petitioner declined to have a magistrate judge take full jurisdiction over the case pursuant to 28 U.S.C. § 636(c). Nevertheless, pursuant to 28 U.S.C. § 636(b), the District Court has the authority to designate a magistrate judge to hear and determine all pretrial matters and to submit findings and recommendations for the disposition of the case. In this matter, the undersigned was designated to determine non-dispositive matters and to submit findings and recommendations concerning dispositive matters. Thus, these findings and recommendations are issued pursuant to the District Court's designation. See 28 U.S.C. § 636(b)(1)(B).

1

1    Petitioner is serving a sentence of 12 years in prison for his 2014 convictions for second

2  degree robbery and petty theft. (Doc. 12-1 at 2.[2]) On April 7, 2017, Petitioner filed a federal

3  petition for writ of habeas corpus in this Court. He does not challenge his conviction, but a

4  disciplinary proceeding held on December 19, 2014, in which he was found guilty of battery on

5  an inmate with a weapon with a nexus to security threat group behavior in violation of Cal. Code

6  Regs., title 15, Sec. 3005(d)(1). (Doc. 12-2 at 34.)

7    On July 7, 2017, Respondent filed an answer to the petition. (Doc. 12.) On September

8  26, 2017, Petitioner filed a traverse to Respondent's answer. (Doc. 15.)

9  **II.    DISCUSSION**

10    **A.    Jurisdiction**

11    Relief by way of a petition for writ of habeas corpus extends to a person in custody

12  pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or

13  treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

14  529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as

15  guaranteed by the United States Constitution. Although the challenged disciplinary proceeding

16  occurred at High Desert State Prison in Susanville, California, at the time of filing of the petition

17  Petitioner was housed at the CSP, which is located within the jurisdiction of this Court. 28

18  U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

19    On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

20  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

21  enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th

22  Cir. 1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA

23  only applicable to cases filed after statute's enactment). The instant petition was filed after the

24  enactment of the AEDPA and is therefore governed by its provisions.

25    **B.    Factual Background[3]**

26    On November 19, 2014, Officer Nakken witnessed three inmates begin to strike each

27

28  [2] Page references are to ECF pagination.
    [3] The factual background is derived from the Rules Violation Report. (Doc. 12-2 at 34.)

2

1  other in the head and upper torso area in the dayroom.  The inmates involved were later

2  identified by their state I.D. cards as inmates Ashley, Groom, and Dennis (Petitioner).  Officer

3  Nakken yelled for the inmates to "Get down!"  All non-involved inmates immediately took a seat

4  on the ground, but Petitioner, inmate Ashley, and inmate Groom ignored the order and continued

5  to fight.  Officer Nakken again yelled, "Get down," and this time the three inmates separated

6  from each other.  Inmates Ashley and Groom went to the right and Petitioner went to the left.

7        Officer Nakken first turned to Ashley who had remained in a fighting stance.  Officer

8  Nakken ordered Ashley to get down but Ashley would not comply, so Officer Nakken deployed

9  pepper spray to Ashley's face and he immediately got down to a prone position on the ground.

10 Nakken turned to inmate Groom who was also in a bladed fighting stance.  Nakken ordered

11 Groom to get down to the ground but Groom refused and remained in a fighting position.

12 Nakken utilized his pepper spray on Groom and Groom immediately got down to the ground in a

13 prone position.

14       Finally, Nakken turned to Petitioner who looked like he was about the charge the other

15 inmates.  Since Petitioner posed an immediate threat to the other two inmates, Nakken utilized

16 pepper spray on Petitioner.  Petitioner immediately got down to a prone position. All three

17 inmates were then handcuffed and searched with negative results for contraband.  Inmate Groom

18 sustained puncture wounds consistent with an inmate-manufactured stabbing weapon.

19       A subsequent review of the inmates' files showed that Groom was a member of the

20 "Bloods" security threat group, and Petitioner was a member of the "Peckerwood" security threat

21 group.

22       **C.     Legal Standard of Review**

23       A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless

24 the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision

25 that was contrary to, or involved an unreasonable application of, clearly established Federal law,

26 as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was

27 based on an unreasonable determination of the facts in light of the evidence presented in the

28 State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);

1  Williams, 529 U.S. at 412-413.

2      A state court decision is "contrary to" clearly established federal law "if it applies a rule

3  that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a

4  set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a

5  different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-

6  406).

7      In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that

8  an "unreasonable application" of federal law is an objective test that turns on "whether it is

9  possible that fairminded jurists could disagree" that the state court decision meets the standards

10 set forth in the AEDPA.  The Supreme Court has "said time and again that 'an unreasonable

11 application of federal law is different from an incorrect application of federal law.'" Cullen v.

12 Pinholster, 563 U.S. 170, 203 (2011).  Thus, a state prisoner seeking a writ of habeas corpus

13 from a federal court "must show that the state court's ruling on the claim being presented in

14 federal court was so lacking in justification that there was an error well understood and

15 comprehended in existing law beyond any possibility of fairminded disagreement." Harrington,

16 562 U.S. at 103.

17     The second prong pertains to state court decisions based on factual findings. Davis v.

18 Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)).

19 Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the

20 petitioner's claims "resulted in a decision that was based on an unreasonable determination of the

21 facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539

22 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997).  A state court's

23 factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable

24 among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-

25 1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

26     To determine whether habeas relief is available under § 2254(d), the federal court looks

27 to the last reasoned state court decision as the basis of the state court's decision. See Ylst v.

28 Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

4

1  2004). "[A]lthough we independently review the record, we still defer to the state court's

2  ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

3       The prejudicial impact of any constitutional error is assessed by asking whether the error

4  had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v.

5  Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)

6  (holding that the Brecht standard applies whether or not the state court recognized the error and

7  reviewed it for harmlessness).

8       **D.       Due Process in Prison Disciplinary Hearings**

9       Under the Fourteenth Amendment, no state shall deprive any person of life, liberty, or

10  property without due process of law. Prisoners retain their right to due process subject to the

11  restrictions imposed by the nature of the penal system. Wolff v. McDonnell, 418 U.S. 539, 556

12  (1974). A prisoner in a prison disciplinary hearing is not entitled to the full array of due process

13  rights that a defendant possesses in a criminal prosecution. Id. at 556. However, a prisoner who

14  is accused of a serious rules violation and who may be deprived of his or her good-time credits is

15  entitled to certain minimum procedural protections. Id. at 571-71 n. 9. Nevertheless, a

16  prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison.

17  Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing Superintendent, Mass. Corr. Inst.

18  v. Hill, 472 U.S. 445, 454-455 (1984)).

19       The process due in such a prison disciplinary hearing includes: (1) written notification of

20  the charges; (2) at least a brief period of time after the notice to prepare for the hearing; (3) a

21  written statement by the fact-finder as to the evidence relied on and reasons for the disciplinary

22  action; and (4) the inmate facing the charges should be allowed to call witnesses and present

23  documentary evidence in his defense when permitting him to do so will not be unduly hazardous

24  to institutional safety or correctional goals. Wolff, 418 U.S. at 564, 566, 570.

25       In addition, a decision to revoke an inmate's good-time credit does not comport with

26  minimum procedural due process requirements unless its underlying findings are supported by

27  "some evidence." Hill, 472 U.S. at 454. In reviewing a decision for "some evidence," courts

28  "are not required to conduct an examination of the entire record, independently assess witness

5

1  credibility, or weigh the evidence, but only determine whether the prison disciplinary board's

2  decision to revoke good time credits has some factual basis." Id. at 455-56.  The Ninth Circuit

3  has further held that there must be "some indicia of reliability of the information that forms the

4  basis for prison disciplinary actions." Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)

5  (uncorroborated hearsay statement of confidential informant with no firsthand knowledge is not

6  enough evidence to meet Hill standard.)

7       **E.     Analysis**

8       In this case, the Lassen County Superior Court denied Petitioner's claims in the last

9  reasoned state court decision, concluding: "No facts are alleged in the petition which

10  demonstrate any deficiency of due process."  (Doc. 12-2 at 2.)

11      Upon review of the record, it appears undisputed that Petitioner received written

12  notification of the charges within the time frame required by state law.  (Doc. 12-2 at 34.)

13  Similarly, it appears uncontroverted that he had a period of approximately 24 days from the date

14  of issuance of the Rules Violation Report until the disciplinary hearing, thus affording him ample

15  opportunity to prepare a defense.  Third, a written statement was issued by the fact-finder as to

16  the evidence relied on and reasons for the disciplinary action.

17      Petitioner argues, however, that he was denied the opportunity to call a key witness and

18  to present documentary evidence.  He claims he requested that Officer Rigling be called to testify

19  to confidential statements that he had taken from Petitioner and other inmates, but the Senior

20  Hearing Officer, Lt. Harper, denied the request.  He further claims that his requests to produce

21  and view photographs and confidential memoranda were denied.

22      Prisoners have a limited right to call witnesses and to present documentary evidence,

23  when doing so would not unduly threaten institutional safety and goals.  Wolff, 418 U.S. at 563-

24  66.  Petitioner contends he was unable to produce photographs which would have shown he

25  didn't participate in the attack.  There is no indication that Petitioner attempted to introduce

26  photographs.  No video of the incident existed, and it appears there were photographs, but they

27  depicted the injuries sustained by the participants and their approximate locations during the

28  incident.  There does not appear to be any photographic evidence which would have been

6

1  exculpatory, nor does Petitioner point to any.

2       The record also shows that the Rules Violation Report relied on confidential information

3  therefore, a CDC-1030 form was issued and provided to Petitioner on November 25, 2014, in

4  advance of the hearing. (Doc. 12-3 at 227-228.) The SHO considered the confidential

5  information and determined that there was reliable evidence that the incident was related to

6  security threat groups. (Doc. 12-3 at 228.) The information revealed that Petitioner and Inmate

7  Ashley were members of one security threat group, while Inmate Groom was a member of a rival

8  group. (Doc. 12-3 at 232.) The SHO concluded from this that the incident related to security

9  threat group behavior. Petitioner does not show that the confidential information was unreliable

10 or that the information would have been exculpatory as to the charge of battery. In any case,

11 there was substantial evidence of his involvement in the battery. The Court may not assess

12 witness credibility and reweigh the evidence. Pinholster, 563 U.S. at 181.

13      Petitioner asked to call Officers Nakken and Rigling as witnesses. The SHO called

14 Officer Nakken and asked the questions submitted by Petitioner. Nakken answered the

15 questions, and the SHO considered the answers. (Doc. 12-3 at 229.) However, Petitioner's

16 request to call and question Rigling was denied. (Doc. 12-3 at 218.) Petitioner contends that

17 Rigling could have stated that he knew Petitioner was not involved in the incident. Petitioner

18 provides no factual basis for his assertion. On the contrary, the record shows that when Rigling

19 arrived at the scene, he assisted in securing and transporting Inmate Ashley to the program

20 office. (Doc. 12-3 at 195.) During his involvement, he witnessed Petitioner at the scene as one

21 of the participants. (Doc. 12-3 at 195.) Petitioner does not establish how his questioning of

22 Rigling concerning confidential memoranda would have shown that he was not involved in the

23 incident. Thus, the SHO reasonably found that the questions Petitioner wanted to ask Rigling

24 were not relevant to the charge of battery on an inmate. (Doc. 12-3 at 229.)

25      Petitioner also requests that the Court review the CDC-1030 confidential information

26 disclosure forms or prison memoranda *in camera*. Petitioner's request must be denied. The

27 confidential information was not part of the prison disciplinary record that was reviewed by the

28 state courts, and Petitioner's claims must be reviewed on the existing state court record.

1 | <u>Pinholster</u>, 563 U.S. at 181.

2 | Finally, Petitioner contends that the evidence was insufficient to show he was an active

3 | participant in the battery.  Nevertheless, the record provides at least some evidence that he was.

4 | Several officers provided statements that they observed Petitioner, Inmate Ashley, and Inmate

5 | Groom fighting and striking each other during the altercation.  (Doc. 12-3 at 231-232.)  When all

6 | of the inmates were told to get down, only Petitioner, Ashley, and Groom remained standing and

7 | were seen fighting each other.  (Doc. 12-3 at 232.)  All three inmates sustained visible physical

8 | injuries, including Petitioner.  (Doc. 12-3 at 232.)  All three inmates were treated for pepper

9 | spray exposure.  (Doc. 12-3 at 232.)  Inmate Groom suffered puncture wounds to his left side

10 | consistent with an inmate-manufactured stabbing weapon.  (Doc. 12-3 at 232.)  The state court

11 | noted this evidence and reasonably concluded that some evidence supported the charge.

12 | As such, the Court concludes that all of the basic due process requirements were met in

13 | this case, thus precluding any finding that habeas relief is justified.  <u>Wolff</u>, 418 U.S. at 554, 556,

14 | 570.

15 | **III.** **RECOMMENDATION**

16 | Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

17 | DENIED with prejudice on the merits.

18 | This Findings and Recommendation is submitted to the United States District Court

19 | Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and

20 | Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of

21 | California.  Within twenty-one days after being served with a copy, any party may file written

22 | objections with the court and serve a copy on all parties.  Such a document should be captioned

23 | "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections

24 | shall be served and filed within ten court days after service of the objections.  The Court will

25 | then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

26 | ///

27 | ///

28 | ///

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     **October 4, 2017**                           **/s/ Jennifer L. Thurston**
                                                                   UNITED STATES MAGISTRATE JUDGE